UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan                                                                          609-989-0478
United States Bankruptcy Judge                                                          609-989-2259 Fax

August 9, 2011

Deirdre M. Richards
Lamm Rubenstone LLC
3600 Horizon Boulevard
Suite 200
Trevose, PA 19053
Attorney for Plaintiff, Wells Fargo Equipment Finance, Inc.

Bunce D. Atkinson
Atkinson & DeBartolo
P.O. Box 8415
Red Bank, NJ 07701
Attorney for Debtor-Defendant, Frank C. Alario

                Re:  Wells Fargo Equipment Finance, Inc. v. Frank C. Alario
                    Case No. 10-37591 (MBK)
                    Adv. Proc. No. 10-2592 (MBK)

Counselors:

      This matter is before the Court upon the motion of Frank C. Alario ("Debtor" or "Defendant"), to dismiss the amended adversary complaint ("Amended Complaint" or "Complaint") filed by Wells Fargo Equipment Finance, Inc. ("Plaintiff" or "Wells Fargo").  The Court has heard oral arguments and has reviewed the submissions filed in the above referenced matter.  The Court issues the following ruling:

      The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984 referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning

of 28 U.S.C. § 157(b)(2)(I) and (J). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

## I. Background

In or about February 2006, Frankie's Franks, Inc. ("Frankie's Franks"), a fast food restaurant, was incorporated in the State of New Jersey. Debtor-Defendant Alario is a 100% owner and the president of Frankie's Franks. In or about October of 2006, Frankie's Franks sought to finance and lease restaurant equipment for Frankie's Franks and submitted a proposal to ACC Capital Corporation ("ACC"). On December 4, 2006, ACC and Frankie's Franks executed a Master Lease Agreement No. FFI1206 ("Lease") whereby ACC provided restaurant equipment to Frankie's Franks. Subsequent to the transaction, Wells Fargo assigned the ACC loan and has sought to enforce its rights thereunder by virtue of an assignment from ACC.

On December 6, 2006, Debtor allegedly executed a Guaranty unconditionally guarantying to ACC the obligations of Frankie's Franks under the Lease. The Guaranty, that was signed before a notary, provided that Dr. Alario would fully and promptly pay and perform all its present and future obligations to ACC, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or unmatured and whether originally contracted with ACC or otherwise acquired by ACC, irrespective of any invalidity or unenforceability of any such obligations or insufficiencies, invalidity or unforceability of any security therefore.

Before executing the Lease and Guaranty, ACC requested that the Debtor submit certain documentation, including financial information of Frankie's Franks, the Debtor, and the Debtor's

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusion of law constitutes finding of fact, they are adopted as such.

medical practice. Dr. Alario additionally provided a financial statement and tax returns to ACC that allegedly showed Dr. Alario had sufficient liquidity and a significant amount invested in real estate.[2] Thereafter, ACC prepared a commitment letter and a large ticket-internal review and credit review. Wells Fargo submits that ACC approved the financing of the restaurant equipment based upon the financial information it was provided.

Additionally, in connection with the Lease, ACC and Frankie's Franks entered into two equipment schedules ("Equipment Schedule No. 1" and "Equipment Schedule No. 2"). Both Equipment Schedules were signed by Dr. Alario and were witnessed and notarized by Anthony J. Silvestri. Equipment Schedule No. 2, entered on May 4, 2007, provided for thirty-six (36) months of payments at the rate of $8,835.11. After making a few payments on the Lease in 2007, Debtor ceased making payments to Wells Fargo.

On September 7, 2010, Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. Wells Fargo is listed in Schedule F as a disputed unsecured creditor. Prior to Debtor's filing of bankruptcy, Wells Fargo brought suit against the Debtor in the Superior Court of New Jersey, Law Division, alleging breach of contract, replevin and conversion based upon Debtor's failure to make payments pursuant to the claimed Guaranty. See Wells Fargo Equipment Finance, Inc. v. Frankie's Franks, Inc.; Frank Alario; et. al., Docket No. MON-L-1477-09.

On June 10, 2011, Plaintiff filed an Amended Complaint seeking to have debts owed to Wells Fargo declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), and

---

[2] The Court notes that Dr. Alario disputes having executed the Guaranty or provided the referenced financial statements. For purposes of this opinion only, the Court assumes that the Guaranty was executed by Dr. Alario and that he knowingly provided the requested financial statements.

3

(a)(6). Plaintiff's Complaint additionally seeks to deny the Debtor a discharge of his debts pursuant to 11 U.S.C. § 727(a)(2), (a)(4), (a)(5) and (a)(7). On July 8, 2011, Debtor filed a motion to dismiss the Amended Complaint ("Motion to Dismiss") arguing that Wells Fargo's Amended Complaint fails to set forth with any particularity any grounds or precise facts for the Court to determine that the claimed debt arising out of Debtor's purported Guaranty is nondischargeable. Oral argument on the above motion was held on August 1, 2011. At the conclusion of the hearing, the Court took the matter under advisement and reserved decision. The Court is now prepared to rule.

## II. Dismissal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Stanziale v. Pepper Hamilton LLP, 335 B.R. 539, 545 (D.Del. 2005). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests." D & R Communications, LLC v. Garett, 2011 WL 3329957 (D.N.J. 2011) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 540). The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully" Id. (quoting Twombly, 550 U.S. at 555). Accordingly, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S.Ct. at 1949 (internal quotations and alterations omitted).

Additionally, with respect to Plaintiff's nondischargeability and objection to discharge claims asserted under § 523(a)(2)(A) and (B) and § 727(a)(2), (4), (5) and (7), respectively, Plaintiff must also satisfy the heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b), made applicable herein pursuant to Fed. R. Bankr. P. 7009, which requires that allegations of fraud be pled with particularity. Fed. R. Civ. P. (9)(b); Kwasnik v. Permahos, 2011 WL 748144 (Bankr. D.N.J. 2011). Rule 9(b) provides that:

> [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Id. Thus, under Fed.R.Civ.P. 9(b), plaintiffs must plead with particularity the "circumstances constituting fraud" such as the "who, what, when where, and how." In re Dulgerian, 388 B.R. 142, 147 (Bankr.E.D.Pa. 2008) (citing In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198, 218 (3d Cir. 2002)); Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 191 (3d Cir. 1984) (holding that Plaintiffs must "inject[] precision and some measure of substantiation into their allegations of fraud."). However, Rule 9(b) is not applied without limit. Instead, Courts are instructed to apply the rule with some flexibility and should be "'sensitive to the fact that application of the Rule prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'" In re Burlington Coat Factory

5

Securities Litigation, 114 F.3d 1410, 1418 (3d Cir. 1997) (citing Shapiro v. UJB Financial Corp., 964 F.2d 272, 284 (3d Cir. 1992)).

### III. The Sufficiency of Plaintiff's Complaint

#### 1. Count I: 11 U.S.C. § 523(a)(2)(A) claim

Wells Fargo alleges that Alario's debt is nondischargeable because he obtained money through false pretenses and false representation. 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt –
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Id. In this Circuit:

> [T]he creditor must prove that: 1) the debtor represented a fact, opinion, intention, or law; 2) the representation was false; 3) the representation was material; 4) the debtor obtained money, property, or services through the misrepresentation; 5) the debtor knew at the time that the statement was false; 6) the debtor intended the creditor to rely on the statement; 7) the creditor actually relied on the statement; 8) the reliance was justified; 9) the creditor sustained damage; and 10) the damages were the proximate result of the false representation.

In re Casini, 307 B.R. 800, 815 (D.N.J. 2004) (citations omitted). Intent can be inferred from the totality of the circumstances. In re Cohen, 54 F.3d 1008, 1118-19 (3d Cir. 1995). The burden of proof is on the creditor to show all of the elements by a preponderance of the evidence. In re Larson, 2009 WL 2144079 (Bankr.D.N.J. 2009) (citing Grogen v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

Additionally, in Dill v. Meyers, 2011 WL 1045340, *4 (Bankr.D.N.J. 2011), Judge Steckroth discussed the elements required to prove false pretenses:

6

>A claim under subsection (A) for false pretenses requires the following elements: "(1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly; (3) that creates a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money . . . to the defendant." Nicholson v. Nicolai et al. (In re Nicolai), 2007 Bankr.LEXIS 339, *7, 2007 WL 405851 (Bankr.D.N.J. 2007) (citing In re Hambley, 329 B.R. 382, 396 (Bankr.E.D.N.Y. 2005)).

In the instant proceeding, Wells Fargo specifically represents that: (1) Dr. Alario signed his name, permitted his brother to sign his name, or otherwise ratified the signature on the Guaranty of the Lease; (2) knowing that he had no intention of repaying the debt to ACC; (3) thereby inducing ACC and/or Wells Fargo to make a loan with Frankie's Franks, of which Dr. Alario was the president. As noted above, the critical element of a § 523(a)(2)(A) cause of action is the making of an affirmatively false representation or an implied misrepresentation. What facts in the Complaint indicate that Dr. Alario has made a false representation? What was the act that created a contrived or misleading understanding of the transaction? The averments, as Plaintiff ultimately conceded, are in the nature of conclusions – not facts. At best, the averments establish a breach of contract claim. To that end, at oral argument, when prompted by the Court to point to facts establishing, for example, that Dr. Alario had no intention to repay the rent, Plaintiff stated that the Court should look to the comprehensive picture, not just one particular sentence or paragraph of the Complaint. Plaintiff additionally stated that further discovery would reveal more than a breach of contract. However, "in evaluating a motion to dismiss, a court may consider only the complaint that contains the claims that are the subject of the motion, exhibits attached to the complaint or answer, matters of public record, and undisputedly authentic documents if the claims are based upon those documents." D & R Communications, 2011 WL 3329957 at *3 (citing Pension Benefit Guar. Corp. v. White Consol.

Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Neither case law nor statute supports allowing the Plaintiff to pursue a fishing expedition through discovery to obtain the required evidence to support the plausibility standard set forth in Iqbal or under Rule 9(b).  Accordingly, the Court finds that the Complaint fails to state a plausible claim for nondischargeability under § 523(a)(2)(A).

### 2. Count II: 11 U.S.C. § 523(a)(2)(B) claim

Count II of the Complaint requests that Wells Fargo's claim be deemed nondischargeable pursuant to Section 523(a)(2)(B).  This section provides that a debtor is not discharged of any debt to the extent obtained by use of a statement in writing:

> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

A creditor must prove the following elements to prevail on a § 523(a)(2)(B) claim: "(1) the debtor made a statement in writing; (2) the statement concerned the debtor's financial condition; (3) the statement was materially false; (4) the debtor made the representation with an intent to deceive the creditor; and (5) the creditor actually and reasonably relied on the misrepresentation."  In re Cohen, 334 B.R. 392, 398 (Bankr.N.D.Ill. 2005) (citing In re Morris, 243 F.3d 548, 552 (7th Cir. 2000)); In re Cohn, 54 F.3d 1108, 1114 (3d Cir. 2005).  Again, the creditor has the burden of proof to show all of the elements by a preponderance of the evidence.  In re Larson, 2009 WL 2144079 (Bankr. D.N.J. 2009) (citing Grogen v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

The Court's analysis centers upon the third and fourth prongs of the Cohen test. Plaintiff has failed to produce any evidence establishing that the financial statement, tax returns, or other written financial information provided to ACC and/or Wells Fargo were false or that the documents were submitted with the intent to deceive ACC. Instead, the Amended Complaint simply describes the financial information provided by Dr. Alario to ACC and then jumps to the conclusion that "the Debtor and or his brother intentionally and with intent to deceive falsified the information submitted to ACC" . . . "induc[ing] ACC to accept the Guranty and make the loan to Frankie's Franks." See Amended Complaint, Paragraphs 76-77. However, Plaintiff has provided no facts that connect the dots. Again, Plaintiff's Complaint contains conclusions – not facts – whereby Plaintiff simply inserts the appropriate proper noun into the statutory elements. As the Supreme Court made clear in Iqbal, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 129 S.Ct. at 1949. As such, Plaintiff's parroting of the statute alone is insufficient to satisfy the required pleading standards, particularly the heightened Rule 9(b) standard applicable to allegations of fraud. Lastly, the Court pauses to note that Plaintiff's initial Complaint did not even seek relief under § 523(a)(2)(B). Instead, the Court allowed Plaintiff leave to amend to add a § 523(a)(2)(B) claim. Plaintiff's second bite of the proverbial apple contains scant evidence that Dr. Alario submitted written financial statements with the express purpose of defrauding Plaintiff. Accordingly, to the extent Plaintiff seeks relief under § 523(a)(2)(B), it is denied.

### 3. Count III: 11 U.S.C. § 523(a)(6) claim

Count III also attempts to except Plaintiff's debt from discharge pursuant to § 523(a)(6). Any debt for a "willful and malicious injury by the debtor to another entity or to the property of

9

another entity" is nondischargeable under § 523(a)(6). 11 U.S.C. § 523(a)(6). In <u>Pfieffer v. Wulster</u>, 2011 WL 1045455 (Bankr. D.N.J. 2011), this Court recently addressed the § 523(a)(6) requirements:

> The United States Supreme Court, in <u>Kawaahau v. Geiger</u>, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), established that § 523(a)(6) does not apply to debts arising from unintentionally inflicted injuries. 523 U.S. at 61-62, 118 S.Ct. 974, 140 L.Ed.2d 90. Specifically, <u>Geiger</u> elaborated on the definition of "injury," holding that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." <u>Id.</u> As such, negligence or recklessness is not sufficient to establish that a resulting injury is willful and malicious. <u>Id.</u>
>
> The willful prong of § 523(a)(6) "is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." <u>Carrillo v. Su (In re Su)</u>, 290 F.3d 1140, 1142 (9th Cir. 2002). "The subjective standard correctly focuses on the debtor's state of mind and precludes application of 523(a)(6)'s nondischargeability provision short of the debtor's actual knowledge that the harm to the creditor was substantially certain." <u>Id.</u> at 1146. As the Debtor's actual intent may be difficult to glean, subjective intent may be ascertained by circumstantial evidence. <u>Id.</u> at 1146 ("In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action."). The malicious prong is separate and distinct from the willful prong and "[i]nvolves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." <u>Petralia v. Jercich (In re Jerich)</u>, 238 F.3d 1202, 1209 (9th Cir. 2001) (internal citations omitted). Malice can be inferred based on the nature of the wrongful act. <u>Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)</u>, 942 F.2d 551, 554 (9th Cir. 1991). To infer malice, however, it must first be established that the conversion was willful. <u>In re Thiara</u>, 285 B.R. 420, 434 (9th Cir. BAP 2002); <u>In re Ingalls</u>, 2010 WL 624089 (Bankr.D.N.J. 2010).

Here, Plaintiff's Complaint fails to allege sufficient facts to show that Dr. Alario's actions were willful and malicious. At oral argument, Plaintiff stated that the act of Dr. Alario's execution of the Guaranty, knowing he had no intention of guaranteeing the Lease, constitutes a "willful and malicious injury." There is insufficient factual content in Count IV to support a

10

finding of the deliberateness which is required for a finding of nondischargeability under this subsection of the Bankruptcy Code. For example, there is a derth of factual context to flesh out the conclusions concerning Alario's alleged intent in Paragraph 81 of the Complaint. Paragraph 81 alleges: "81. The conduct of Alario above constitutes willful or malicious injury by the Debtor to another entity or property of another entity." This allegation is both too cursory and too conclusory to meet the Twombly and Iqbal plausibility standards. The Court will therefore grant Dr. Alario's Motion to Dismiss with respect to Count III of the Complaint.

### 4. Count IV: 11 U.S.C. § 727(a)(2), (4), (5) and (7)

Plaintiff additionally objects to Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2), (4), (5) and (7). At this juncture, Plaintiff's objection to discharge survives. To date, this Court has stayed discovery with respect to Plaintiff's claims arising under § 727. Accordingly, the relief Debtor requests is premature. However, in order for Wells Fargo to proceed, it must first establish that it has standing. To do so, Wells Fargo must produce proof that Dr. Alario actually signed the Guaranty. As this Court made clear at the August 1, 2011 hearing, the Court is not convinced that Dr. Alario did not sign the Guaranty, despite Debtor's contentions otherwise. Nonetheless, Plaintiff has not yet put forth sufficient evidence to establish said fact. Accordingly, the case will continue in order to discern whether Dr. Alario signed this Guaranty or has any contractual obligation owing to Wells Fargo. Assuming Wells Fargo has standing, time exists to object to discharge as a plan has yet to be confirmed in the main case. See Bankruptcy Rule 4004.

### IV. **Conclusion**

Counts I, II, and III of the Complaint are dismissed with prejudice for failure to state a claim. However, the Court finds that Count IV will continue to trial to determine whether Wells Fargo has standing to object to the Debtor's discharge. Debtor is directed to submit a form of order.

*/s/ Michael B. Kaplan*
Honorable Michael B. Kaplan
United States Bankruptcy Judge